FLAGLER v. HEARST.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

1. SHIPPING—CHARTER PARTY—CONSTRUCTION.
　　The construction of a charter party of a vessel for a voyage for a certain time, with the privilege of an extension thereof, is for the court, and not for the jury.

2. SAME—EXTENSION—CONVERSION—SUFFICIENCY·OF EVIDENCE.
　　A vessel was chartered to the defendant for a voyage to the West Indies for a period of six weeks, with the privilege of extension. There was evidence that the vessel was chartered for a particular voyage, and a bond was executed requiring the return of the vessel at the expiration of the charter party. One extension for one month was granted, and before the expiration the owner demanded the return of the vessel at such time, and the defendant received notice thereof when the vessel was at a point that it could have been returned by that time; but he failed to return it, but used it as a dispatch boat for some months thereafter. *Held* sufficient to show a conversion of the vessel at such date, since the privilege of extension only entitled the charterer to an extension for the voyage for which the vessel was originally chartered.

3. SAME—EVIDENCE—ADMISSIBILITY.
　　Where a charter party of a vessel for a period of six weeks specifies that it is for a voyage to the West Indies, and gives the charterer the privilege of taking an extension, its uncertainty as to the time of such extension authorizes the admission of parol evidence of the negotiations leading to the execution of the contract in a suit for a conversion in failing to return the vessel by a certain time.

Appeal from trial term, New York county.

Action by John H. Flagler against William R. Hearst for conversion of a yacht. From a judgment in favor of the defendant, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

W. J. Curtis, for appellant.
B. F. Einstein, for respondent.

INGRAHAM, J. The action is to recover for the conversion of a steam yacht, the complaint alleging that on April 26, 1898, one A. Chaudon was the owner and entitled to the immediate possession of the steam yacht Anita, her tackle, apparel, and furniture; that on said 26th of April, 1898, the said yacht was in the possession of the defendant, who, although requested so to do by Chaudon, would not deliver the same to him, but then and ever since has wrongfully detained the same to his own use, to the damage of said Chaudon in the sum of $125,000; and that Chaudon has assigned this claim to the plaintiff. The action was commenced on May 14, 1898, and the

defendant answered the complaint, denying each and every allegation thereof, and for a further and separate defense, in mitigation of damages, alleged that prior to September 11, 1899, and subsequent to the commencement of this action, the plaintiff, as the owner of the steam yacht Anita, entered upon and took possession of the said yacht, and has since remained in possession thereof. The issue presented by the pleadings is as to the right of possession of this yacht on the 26th of April, 1898, and as to the facts in relation to this question there is no material dispute. The plaintiff was the owner of a steam yacht called the Anita; she, however, having been registered in the name of A. Chaudon. On or about the 26th of February, 1898, the defendant applied to charter this yacht. Negotiations seem to have been conducted between a Mr. Reddish, the plaintiff's private secretary, and a Mr. Gerould, representing the defendant. Gerould was not called as a witness. The plaintiff, in his brief, states that he died before the trial. Capt. Stanwood, who took command of the boat for the defendant, was called as a witness, and testified that he called upon Reddish, by direction of Gerould, on Tuesday, February 24th. He was asked several questions as to whether statements were made by Gerould to Reddish as to the time for which the boat was to be chartered, but, upon objection of the defendant, the witness was not allowed to answer these questions. He, however, was allowed to testify that Gerould told Reddish that the boat was to be used for carrying a party around Cuba and the West Indies; that Reddish then asked if she was going on a filibustering expedition, to which the witness replied that she was not; and that that was all that was said. It subsequently appeared that this party consisted of several United States senators and members of the house of representatives and newspaper men. Upon this statement that the boat was to be used to carry a party of five around Cuba and the West Indies, and was not going on a filibustering expedition, a charter of the yacht was arranged. The charter was reduced to writing, and signed by the parties on the 26th of February, 1898. By that charter party A. Chaudon agreed "on the freight and chartering of said vessel to the said party of the second part (defendant) for a voyage from the port of New York to port or ports in the United States and the West Indies for a term of six weeks from date hereof, and with privilege to party of the second part for extension beyond six weeks on the terms following"; that the vessel was to be at the sole use of the party of the second part, and he agreed to charter and hire the said vessel for the sum of $1,800 per month, payable monthly in advance; that the party of the second part became responsible for the safe return of the vessel to the party of the first part at the port of New York by bond to be executed covering such responsibility, and to put the vessel in and out of commission. Simultaneously with the execution of this instrument, a bond was executed in the penalty of $87,000. The defendant paid to the plaintiff or his representative $1,800 for the use of the yacht for the month ending March 26th, and took possession of her on the 26th of February. On the 1st day of March the yacht left New York for Newport News, and started for Key West on the 4th of

March, arriving there on March 9th or 10th. The day after, she left Key West for Havana, and from Havana she went to various ports in the island of Cuba, until, on the 14th of March, Mrs. Thurston, wife of Senator Thurston, who was one of the guests upon the yacht, died. Her death resulted in breaking up the party. All except Senator Thurston left the boat in Cuba, and on the morning of the 15th the boat, with Senator Thurston and the body of his deceased wife, left for Key West, arriving there on the afternoon of the 15th. Senator Thurston there left the boat. None of the party for whose use she had been chartered returned to her, and she was not again used in connection with that trip. In the meantime the affairs between the United States government and Spain were drifting towards war, and on the 17th of April the yacht was boarded by two correspondents of a newspaper owned by the defendant, and she left again for Cuba; and from that time till August, with the exception of one trip to New York in the latter part of June, she was used by the defendant as a dispatch boat for the purpose of obtaining news for his newspaper, accompanying the United States fleet in its naval operations around Cuba. The first action on the part of either of the parties to this charter party in relation to the extension provided for appears in a letter written in the name of the plaintiff by his private secretary, Mr. Reddish, and dated March 31, 1898. That letter was addressed to the defendant, and is as follows:

"Dear Sir: Will you kindly remit $1,800 for charter of steam yacht Anita for the month from March 26 to April 26, as per terms of the charter party, and oblige        Yours, very truly,        J. H. Flagler. R."

In answer to that letter, on the 5th of April, there was sent on behalf of the defendant to the plaintiff a check for $1,800 "in payment of monthly charter fee (Mar. 26 to Apr. 26) steam yacht Anita." There is no evidence that there was any arrangement between the parties as to an extension of the charter for the yacht other than this correspondence, but from that it would appear that there was an implied agreement or understanding that the charter, which would have expired on the 9th of April, was to be extended to the 26th of April. On the 19th of April the owner caused a letter to be written to the defendant, which seems to have been received by him on the same day. By that letter the owner notified the defendant that:

"I shall require my yacht Anita, heretofore chartered to you on April 26th, the expiration of the term for which you have paid, and will thank you to arrange to deliver the same to me on that date under the terms of the charter party at the port of New York. * * * I am giving you a week's notice, so that you will not be incommoded in the event it had been your intention to ask for a renewal of the charter at the end of the present term."

It appeared that this yacht arrived from the island of Cuba at Key West at 1:30 p. m. on the morning of the 19th of April, remaining at Key West the 20th and 21st, and leaving with the United States fleet on the 22d of April; war between the United States and Spain having been declared on the 21st. It also appeared that this yacht could have come from Key West to New York inside of six days; that on the 21st of April (two days after the notice of the owner to

the defendant that the yacht would be required on the 26th) he received a letter from the defendant, stating, "I wish to avail myself of the terms of the charter party for the yacht Anita made between us, and dated February 26th, 1898, allowing me to extend the said charter party;" and on the same day the owner wrote to the defendant in answer as follows:

"Dear Sir: Yours without date is this moment received. You have already had one extension of the term of the charter party, consisting of about two weeks, expiring April 26th, for which you have paid, and I am unwilling to grant you any further extension. I repeat the demand contained in my letter of April 19th,—that you return the boat to me at the port of New York on April 26th, under the terms of the charter party; and I beg to notify you now that, if the boat is not returned at that time, and in the condition called for by the charter party, I shall hold you responsible on your bond for any damages that I may suffer by reason of your acts; and I shall take such other and further proceedings as I may be advised.

"Yours, truly,　　　　　A. Chaudon."

In reply to this letter the defendant wrote that he had placed this letter in the hands of his attorneys, who would communicate with the charterer on the matter to which "your letter refers."

It is quite clear from the evidence that, if the defendant had desired to comply with the terms of the charter, he could have had no difficulty, after the 19th, in getting the boat to New York in time; but he made no effort to do so, and continued to use the yacht as a dispatch boat during the whole of the time that the war lasted between the United States and Spain, with the exception of a short trip to New York in the latter part of June; and was so using her on May 14, 1898, when this action was commenced for a conversion of the boat. The position thus taken by the defendant that he was entitled to retain possession of the boat during his pleasure, under the terms of the charter party, and refusing to return the boat to the plaintiff until he had no further use for her, puts the defendant clearly within the position of having been guilty of a conversion of the boat on the 26th of April, if the owner was entitled to have the boat delivered on that day. The construction of this charter party was for the court, and not for the jury. The learned trial judge seems to have construed the agreement as a charter for six weeks, with a right to the defendant to extend that period for a reasonable time; leaving it to the jury to determine whether or not all extension beyond the 26th of April was reasonable under the circumstances. Four special questions were submitted to the jury, the court instructing them that, if they found that the defendant was entitled to an extension beyond the 26th of April, they were to find, in answer to the first question submitted, that the plaintiff was not entitled to the possession of the boat on that day. The counsel for the plaintiff requested the court to charge that "defendant's failure, after demand made, to return the boat on April 26, 1898, constituted a conversion of the yacht, and the plaintiff is entitled to recover damages for such conversion." The court refused so to charge, and the plaintiff excepted, and also excepted to the submission of the first question to the jury. The jury found that the plaintiff was not entitled to the possession of the boat on the 26th of April, whereupon the court di

rected a general verdict for the defendant, to which direction the plaintiff excepted.

The first question presented is whether the defendant was bound to return the boat at the port of New York on the 26th of April, 1898. That question is not free from doubt, but we think that the defendant was not justified in retaining possession of the yacht after April 26, 1898. The only evidence we have as to the negotiations between the parties was that the representative of the defendant stated that the object of the charter was to carry a party around Cuba and the West Indies, and that the boat was not to be used on a filibustering expedition. The boat was chartered, not for the general use of the charterer, but for a voyage from New York to a port or ports in the United States and the West Indies for a term of six weeks, with a privilege of an extension beyond the six weeks. This provision of the charter party would seem to negative an intention upon the face of the instrument that the extension was to be an indefinite one, at the option of the defendant. Both the voyage and the extension are in the singular, apparently contemplating but one voyage and but one extension; and it would seem that the extension was to provide for the contingency of the voyage continuing for a period exceeding six weeks. After the expiration of the month from the 26th of February, namely, the 26th of March, the yacht was still absent upon the voyage; and on the 31st the plaintiff, or his representative, wrote a letter to the defendant, asking for a check for $1,800 for the charter of the yacht up to the 26th of April. This, in effect, was a proposition of the plaintiff or his representative for an extension of the time during which the charter was to continue from the 9th, when the six weeks were up, until the 26th, a period of between two and three weeks; and in that the defendant acquiesced by sending a check for the amount due for the use of the yacht to the 26th of April. By the acceptance of this proposal, if it may be so termed, by the defendant, without any statement or claim that he was entitled to a further extension, or notice that he claimed the right to exercise the option to extend the charter of the boat beyond the 26th of April, I think the defendant accepted an extension as proposed by the plaintiff; and, as the voyage for which the yacht was chartered had ended, and the use of the boat which was contemplated had come to an end, the defendant had no right to insist upon a further extension of the charter party, and to refuse to deliver the boat to the plaintiff on the 26th of April, 1898. While there was no restriction in the charter party as to the use to which this boat should be put, still the whole evidence and the charter party itself show that at the time it was made neither party contemplated a use of the yacht except for the voyage for which the boat was chartered. The plaintiff's representative required the defendant to execute a bond by which he would become personally responsible in case the boat was not returned as provided for in the charter party; but there is nothing to show that the giving of this bond contemplated anything but a loss of the yacht by the usual perils of the sea, or perils that are incurred by making a voyage of this kind. The condition of the bond was for the return of the vessel within the time specified in the charter party. All these instru-

ments contemplated a return of the boat upon the expiration of this voyage, which should be within six weeks after the date of the charter party, or such a necessary extension as was required for the completion of the object for which the charter was made, and expressly negatives the idea of an intention to give to the defendant a right to an indefinite extension after the termination of the voyage, and when the use to which it was intended to put the yacht was entirely different, imposing upon her different services and exposing her to different risks. The defendant's sole claim to this construction rests upon the language used in the charter party. It is, "With privilege to the party of the second part for extension beyond the six weeks." To extend means to expand; to enlarge; to widen (Imperial Dict.); to "make larger in space, time, or scope; carry out further than the original point or limit; enlarge or lengthen the bounds or dimensions of; lengthen; widen; enlarge; prolong" (Stand. Dict.). And it was this right to enlarge or prolong to which the defendant was entitled. This right was coupled with the express provision that the vessel was chartered for a voyage for a term of six weeks from the date of the charter party; and the privilege to enlarge the term of six weeks appears to me to have relation to the voyage for which the vessel was chartered, and not to have been intended to give a right to an unlimited enlargement of the use of the vessel, entirely disconnected with the voyage, and for another and entirely different purpose. As before stated, the boat was at Key West on the 19th of April. The voyage had then ended. The defendant had not at that time claimed any right to retain the boat for any period beyond the 26th. There seems to have been no obstacle in the way of the boat being returned to New York, and delivered to the plaintiff at the time specified; and, as the claim upon which the defendant bases his right to retain the boat seems to us to have been unjustified, his failure to make any effort to return her, and his retaining her in his possession and using her for his own purposes, in the face of the plaintiff's demand for a return of the boat, was a distinct conversion, and it was the duty of the learned judge to have instructed the jury that the plaintiff was entitled to the boat on the 26th of April. This requires, therefore, a reversal of the judgment.

It is proper that we should add that, in our opinion, this was a proper case for the admission of evidence of the negotiations leading up to the execution of this contract; and, in view of the indefiniteness of the language used in relation to this extension, it would be proper for the court to consider the statements of the parties, prior to the execution of the contract, as to the time for which the boat would be probably required, as well as the object for which the boat was to be chartered.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

HATCH, J. (concurring). Upon the record now before the court, I am of the opinion that the charter party, in the absence of any proof in explanation of the same, was limited to a voyage to transport the United States senators and representatives to Cuba and re-

turn. The terms of the charter party, taken in connection with the evidence given in the case, seem clearly to show that the contemplated use of the yacht was for that purpose, it being assumed at the time of the execution of the instrument that the voyage would cover a period of six weeks; but a contingency was contemplated in which it might be extended beyond such period, and, in order to cover such contingency, provision was made for an extension. The terms of the charter party securing the latter right are quite ambiguous, and may well be held void for uncertainty. As, however, the parties clearly contemplated that there might be a contingency requiring an extension, and the language securing it being ambiguous, I agree with Mr. Justice INGRAHAM that a case was presented where parol proof was proper in explanation of the written instrument. Proof of this character was offered by the defendant, and was excluded. It ought to have been received. Upon the present record, however, it clearly appears that the purpose of the voyage had ended by the death of Senator's Thurston's wife, as early as the 19th day of April. The voyage for such purpose was never thereafter resumed, nor was it contemplated that it would be; consequently, upon the evidence as presently existing, it is clear that the purpose for which the boat was chartered, both under the charter and the terms of the extension, had come to an end. When, therefore, the plaintiff made demand for a return of the boat on the 26th day of April, it became the duty of the defendant to comply with such demand, and his failure so to do constituted a conversion of the boat. As we have before observed, the facts upon this subject are without dispute. When the notice was given to return the boat she was lying at anchor in the harbor of Key West, in charge of her captain and crew. No attempt, however, was made to comply with the demand to return the yacht; the defendant standing upon his claimed rights under the charter party. The facts, therefore, being without dispute, the question of conversion became one of law for determination by the court. Laporte v. Express Co., 23 App. Div. 267, 48 N. Y. Supp. 292; Wright v. Bank, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356. The court upon the trial, in the first instance, charged the jury that under the charter party the defendant was not at liberty to retain the possession of the boat after the expiration of the extension of the charter party, and after a demand for her return was made. This was a correct statement of the law, but the court, in addition, submitted to the jury the question as to whether the defendant should have complied with the demand, and that he was entitled to a reasonable time to make compliance therewith. The submission of the latter question, we think, was error. Had the defendant attempted compliance with the demand to return the boat, and had failed to deliver her, out of commission, on or before the 26th of April, undoubtedly all of the circumstances attending the attempt to make compliance with the demand might have become a question of fact for determination by the jury as bearing upon the subject of the conversion. But the defendant made no such attempt. He stood upon a claim of legal right to retain the custody and possession of the boat under the terms of the charter party; consequently, when the court reached the conclusion that he

was bound to deliver the boat to the defendant on the 26th of April, if he might with reasonable diligence accomplish a delivery within that period, it became its duty to hold, as matter of law, that the defendant was guilty of a conversion, for, under such circumstances, he was not at all protected by any claimed right under the terms of the charter party. The conversion was complete, and the question became alone one for the assessment of damages. Counsel for the plaintiff also requested the court to charge that, if there was failure to deliver the boat at any time prior to the commencement of the action, the defendant was guilty of a conversion. The court, when first so requested, refused so to hold or charge. It is clear that the request was correct. The defendant was bound to return the boat in compliance with the demand, and, if there was anything which excused him from delivering her on the 26th of April, it was certainly not a continuing excuse; and plaintiff's claim of conversion clearly existed prior to the bringing of the action, if it had not existed on the 26th of April. The court, however, subsequently submitted this question to the jury in the form of a special finding as to when the conversion, if any such there was, took place. The jury, however, failed to·make answer to any of the special questions submitted, except to answer that the plaintiff was not entitled to the possession of the yacht on April 26, 1898, and upon this finding the court directed a verdict. It is clear, therefore, that the jury did not follow the directions of the court, nor did the court adhere to its ruling as to the law of the case, as it finally disposed of the case upon the sole question as to whether the conversion took place on the 26th of April. For these reasons we think the judgment must be reversed.

It was further claimed by the defendant that the proof established that the plaintiff subsequently resumed possession of the yacht, but the court correctly held that, if it so appeared, it would not defeat the cause of action, but bore upon the measure of damages. This ruling, we think, was proper, and that in this respect the court charged the correct rule respecting the weight to be attached to the resumption of possession, assuming it to have been had.

I think the judgment should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event.

PATTERSON and McLAUGHLIN, JJ., concur.