## THOMAS et al. v. WESTHEIMER & DAUBE.

No. 10686—Opinion Filed May 23, 1922.

Rehearing Denied Sept. 26, 1922.

(Syllabus.)

**1. Appeal and Error—Service of Case-Made—Statute.**

"The case so made, or a copy thereof, shall, within fifteen days after the judgment or order is rendered, be served upon the opposite party or his attorney. * * *" Section 5242, Revised Laws of Oklahoma, 1910, as amended by chapter 218, Session Laws of 1917.

**2. Same—Extension of Time.**

"The court or judge may, upon good cause shown, extend the time for making a case and the time in which the case may be served. * * *" Section 5244, Revised Laws of Oklahoma, 1910.

**3. Same.**

When at the time of overruling a motion for a new trial, and by order of court, the time in which to make and serve a case-made is extended for a period of 60 days, the 60 days' extension of time does not run concurrently with the statutory time of 15 days, but the word "extended" means to stretch out or lengthen the time already provided for by statute, and, in the absence of any words of limitation, begins to run at the expiration of the statutory period of time.

**4. Trial—Issues Triable by Court—Jury Trial—Statute.**

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided." Section 4993, Revised Laws of Oklahoma. 1910.

**5. Jury—Trial by Jury—Mortgage Foreclosure.**

In an action for the recovery of money on promissory notes, although involving the foreclosure of a mortgage on real estate, issue being joined as to the amount due, defendant is entitled to a trial by jury as a matter of right. Choctaw Lumber Co. v. Waldock, 78 Okla. 232, 190 Pac. 866.

**6. Jury—Waiver of Jury Trial—Statute.**

"The trial by jury may be waived by the parties, in actions arising on contract, and with the assent of the court, in other actions, in the following manner: By the consent of the party appearing, when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney, filed with the clerk. By oral consent, in open court, entered on the journal." Section 5016, Revised Laws of Oklahoma, 1910.

**7. Same—Mortgage Foreclosure—Case.**

The record examined, and held, that the plaintiffs in error did not waive a trial by jury.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by the Deming Investment Company, as plaintiff, to foreclose a certain mortgage against C. W. Thomas and Minnie G. Thomas, his wife, as owners of the land in controversy, and certain other defendants, who were mortgagees and lienholders. Pending the action Minnie G. Thomas died and the action was revived as against her heirs and legal representatives. Westheimer & Daube were defendants claiming under a third mortgage, and recovered a judgment in the trial court. Defendants C. W. Thomas and the heirs and personal representatives of defendant Minnie G. Thomas appeal to reverse the judgment as against Westheimer & Daube. Reversed and remanded.

Rutherford Brett and Eddleman & Sneed, for plaintiffs in error.

J. C. Thompson, for defendants in error.

MILLER, J. This action was commenced in the district court of Carter county by the Deming Investment Company, as plaintiff, to foreclose a certain mortgage exe-

cuted by Charles W. Thomas and Minnie G. Thomas, his wife, on 320 acres of land belonging to Charles W. Thomas, described as follows: The S. W. ¼ and N. ½ of N. W. ¼ and S. E. ¼ of N. W. ¼ and S. E. ¼ of N. E. ¼ of section 24, township 5 south, range 2 east, Carter county, Okla.; and 170 acres belonging to Minnie G. Thomas, described as follows: E. ½ of S. W. ¼ and N. W. ¼ of S. E. ¼ and W. ½ of N. E. ¼ of S. E. ¼ and N. ½ of S. W. ¼ of S. E. ¼ and S. W. ¼ of S. W. ¼ of N. E. ¼ of section 3, township 3 south, range 1 east, Carter county, Okla.

The Ardmore National Bank, a corporation, and Max Westheimer and David Daube, a co-partnership, doing business under the firm name and style of Westheimer & Daube, and certain others were made parties defendant.

The defendants Thomas and Thomas had executed a second mortgage to defendant Ardmore National Bank, and a third mortgage to defendants Westheimer & Daube. These codefendants of Thomas and Thomas filed separate answers and cross-petitions, asking for the foreclosure of their respective mortgages. The other defendants and certain interveners claimed liens upon the land and filed cross-petitions and petitions in intervention, seeking to have their rights under their respective liens adjudicated in this action.

Thereafter, on application of Westheimer & Daube, a receiver was appointed by the court to collect the rents and profits accruing from the land. The only real controversy in the trial court was on the issues presented by Westheimer & Daube in seeking to foreclose their mortgage. The only errors complained of in this court are regarding the claim and foreclosure proceedings of Westheimer & Daube. Therefore, it will not be necessary for us to consider the proceedings affecting the plaintiff and the other defendants seeking to enforce liens against the above-described land, except in so far as they may affect the claims of Westheimer & Daube.

After this action was instituted and the issues joined, and in February, 1918, Minnie G. Thomas died intestate, leaving as her sole surviving heirs at law her husband, Charles W. Thomas, and the following children: Peachie Wilkes, Sue Wyatt, Junie Crim, William W. McCauley, Russell G. Thomas, Charles Cruce Thomas, and Douglas H. G. Thomas, the last three being minors. Thereafter Charles W. Thomas was duly appointed administrator of the estate of Minnie G. Thomas, deceased, and on May 4, 1918, this action was revived as against said administrator.

Thereafter, and on July 1, 1918, on application of the plaintiff, the Deming Investment Company, another order of revivor was made reviving the action against each and all of the heirs of Minnie G. Thomas, deceased, which said order specifically named each of said heirs as above set forth.

On September 3, 1918, the district court of Carter county appointed Guy H. Sigler as guardian ad litem to defend for the minor defendants, Russell G. Thomas, Charles Cruce Thomas, and Douglas H. G. Thomas.

On December 2, 1918, a motion was filed in behalf of William W. McCauley, which was duly verified by Guy H. Sigler, his attorney, asking for a continuance of said cause, because defendant William W. McCauley had been conscripted under the Selective Service Act and was at said date serving in the United States Army in France. This motion was by the court overruled. Written applications asking for a jury trial were filed by C. W. Thomas and the heirs of Minnie G. Thomas, deceased. These applications were, by the court, overruled and denied.

On December 9, 1918, the case was tried to the court without a jury, over the objection of the appealing defendants, which resulted in a judgment foreclosing the several mortgages, including the mortgage of Westheimer & Daube. The amount due under this mortgage was one of the issues in the case, and the court rendered judgment for $8,926.40, with interest from the date of the judgment, and in addition thereto an attorney fee.

Defendants C. W. Thomas, administrator of the estate of Minnie G. Thomas, deceased, C. W. Thomas, Peachie Wilkes, Sue Wyatt, Junie Crim, William W. McCauley, Russell G. Thomas, Charles Cruce Thomas, and Douglas H. G. Thomas filed a motion for a new trial, which was overruled by the court; gave notice of appeal; saved all necessary exceptions and appear here as plaintiffs in error. The Westheimer & Daube judgment is the only part of the judgment appealed from and the only part we will consider. In referring to Westheimer & Daube they will be designated as defendants in error.

The plaintiffs in error have set out 13 specific assignments of error, each of which, excepting the last one, they urge in their brief as grounds for reversing the judgment of the trial court.

The defendants in error have filed a motion to dismiss this appeal on four specific grounds, questioning the jurisdiction of this court to hear and determine the appeal. As this is a jurisdictional question, it will be the first question determined. The first ground questioning the jurisdiction reads as follows:

"The purported case-made attached to the petition in error herein shows that on the 26th day of December, 1918, the appellants were given 60 days to prepare and serve a case-made, and on the 25th day of February, 1919, appellants were granted a further extension of 60 days, which last extension the court was without authority to make, the 60 days first allowed having expired."

Under the statutory rules for computation of time, it may be conceded that 60 days from the 26th day of December, 1918, would expire on the 24th day of February, 1919, therefore defendants in error contend that the time to make and serve the case-made expired on the 24th day of February, 1919. To determine this question it is necessary to examine the language of the order itself, and, when examined, we do not agree with this contention. That part of the order necessary for us to consider reads:

"* * * And now for good cause shown, the time is hereby extended for a period of 60 days in which to make and serve case-made herein. * * *"

Section 5242, Revised Laws of Oklahoma, 1910, as amended by chapter 218, Session Laws of 1917, reads, in part, as follows:

"The case so made, or a copy thereof, shall, within 15 days after the judgment or order is rendered, be served upon the opposite party or his attorney. * * *"

Section 5244, Revised Laws of Oklahoma, 1910, provides, in part, as follows:

"The court or judge may, upon good cause shown, extend the time for making a case and the time in which the case may be served. * * *"

By said section 5242, supra, a definite and specific time is fixed by statute to make and serve the case-made. By said section 5244, supra, for good cause shown either the court or judge may extend the time allowed by statute.

This order was made under section 5244, supra. The time was extended because sufficient cause had been shown. It may be the order would more clearly express its meaning by re-arranging, but without changing a word in the order. As re-arranged it would read:

"The time, in which to make and serve case-made herein, is hereby extended for a period of 60 days."

What time is extended? It is the statutory time of 15 days allowed under section 5242, supra. If an extension is granted for a period of time, this presupposes the existence of specified time, otherwise it would not be an extension of time, but would be a new and independent period of time specified. If there was not a time already specified, there would be no time to extend. If the order read:

"The time is hereby extended for a period of ten days and the statute already granted 15 days."

It certainly would not be contended that ten days from the date of the order was an extension of time, when the statute already granted 15 days.

Webster's International Dictionary defines "extend":

"Ex out (plus)  Tendere to stretch; to stretch or draw out; * * * hence, to lengthen or prolong either in space or time; to carry forward."

In using the word "extended," the court recognized there was a specific time fixed by statute, and that is the time which was being extended by this order. But it is insisted the 60 days began to run from the date of the order. The order does not contain any words of limitation. It clearly extends the time 60 days. The time already allowed by statute is 15 days from the date of the order, and, if that time is to be extended, stretched out, or carried forward 60 days, the 60 days would necessarily begin to run at the very moment the statutory time expired. When a thing is extended, this implies that it will be continuous, without a break, gap, or omission; neither would the extension run concurrently with the thing extended. If the order granted 75 days to serve the case-made, all would concede the statutory time had been extended 60 days, and not 75 days. If a steel shaft was 15 feet long and the length was extended 60 feet, no one would then contend it was only 60 feet long.

If the order had read, "The time is hereby extended 60 days from this date," that would have been a limitation, and in fact be an extension of only 45 days. In the absence of any words of limitation or any time being fixed from which the extension would start, it would begin at the end of the statutory 15 days.

The Supreme Court of Wisconsin had the question of the word "extended" before it in the case of Wisconsin Cent. R. Co. v. Comstock, 71 Wis. 88, 36 N. W. 843, wherein Orton, J., speaking for the court, said:

"1. Because the lands, as a part of said grant, were exempted from taxation and assessment in the year 1879, when they were assessed as the basis of the tax, by section 21, c. 314, and section 22, c. 362, J. & L. Laws 1866, exempting them from taxation for ten years from the taking effect of said acts, and by section 1, c. 21, Laws 1877, extending said time three years. This depends upon the construction of said extension act: Did the three years commence to run from the termination of the original exemption, or from the taking effect of the extension act of 1877? If the latter, then the three years' extension had not expired when these lands were assessed in 1879. The language of said act would seem to be so plain as to leave little room for construction. It is as follows: 'The time fixed,' * * * during which the lands granted to said companies by said acts are exempted, * * * is hereby extended three years.' There was a lapse of the exemption between the time it expired, and the time of the extension. The word 'extended' implies something to be extended, and must necessarily be connected with that something. It is derived from 'ex,' from or out of, and 'tendere,' to stretch or stretch out, and signifies, to draw forth or stretch or prolong. Webst. Dict. 'The time is hereby extended,' is the language. The time is stretched out or prolonged three years. The other construction would not make it an extension, but a new exemption, independent of any other exemption. If such be not the meaning, what was the use of section 4 of the act, which provides that it shall not exempt the lands which had theretofore been assessed? For all the lands were taxable for the year 1876—those which had been actually assessed, and those not assessed. It appears to me that this question was so settled and decided in Railroad Co. v. Lincoln Co., 67 Wis. 478, 30 N. W. Rep. 619."

If the word "extended" had been omitted from the order and plaintiffs in error been granted a period of 60 days in which to make and serve case-made, then the time would begin to run from the date of the order. Such an order would not extend the statutory period of time 60 days, but would only allow 60 days in which to make and serve the case-made. This would amount to extending the statutory time only 45 days.

In the case of Soliss v. Davis, 28 Okla. 496, 114 Pac. 609, Hayes, J., has very ably defined this question. In the opinion he says:

"The journal entry of the order made on the 24th day of March, 1910, extending the statutory time for serving the case, among other things, provides: 'That said defendant should be granted an extension of time in which to make and serve a case-made in the above-entitled cause for the Supreme Court; that defendant should be granted 60 days in which to make and serve a case-made.' The court found that defendant should be granted an extension of time in which to make and serve his case, and ordered that he have 60 days in which to do so. The order does not read that 'he shall have 60 days' extension of time,' or that 'the time shall be extended sixty days,' but that 'he should be granted 60 days in which to make and serve a case-made.' Under the statute, he has three days after the entry of the order overruling the motion for a new trial in which to make and serve his case."

See, also, Harrison v. Reed et al., 81 Okla. 149, 197 Pac. 159; Flagler v. Hearst, 70 N. Y. Supp. 956.

We conclude the order extended the time 60 days from the expiration of the statutory time of 15 days. Therefore, the time provided for under the order made on December 26, 1918, had not expired when the court granted a further extension on February 25, 1919, and the court had jurisdiction to make the order complained of. Having reached this conclusion, it is unnecessary to pass upon the other grounds in the motion to dismiss, for they are similar to the one we have just decided. The motion to dismiss is overruled and denied.

We will next consider the third, fourth, and fifth assignments of error, which are as follows:

"Third. The court erred in refusing the demand of C. W. Thomas for a jury to try the issues joined.

"Fourth. The court erred in refusing the demand of William McCauley, Peachie Wilkes, Sue Wyatt, and Junie Crim for a jury to try the issues joined.

"Fifth. The court erred in refusing the demand of Russell Thomas, Charles Cruce Thomas, and Douglas H. G. Thomas, the minor defendants, by their guardian ad litem, Guy H. Sigler, for a jury to try the issues joined."

The cross-petition of defendants in error, Westheimer & Daube, alleged the execution of a note by Thomas and wife in the sum of $5,830. That this amount was due defendants in error, together with interest and attorney fees. That by virtue of a mortgage executed by Thomas and wife to secure the payment of said note, defendants in error had a lien upon the land in controversy for the amount due. Plaintiffs in error, answering this cross-petition, pleaded that said note had been paid by the rents

and profits from certain lands the defendants in error had collected for certain years, the amount of which was sufficient to extinguish the debt. To this answer the defendants in error filed a reply in which they specifically deny the allegations in the answer in regard to the collection of the rents for the years 1913, 1914, 1915, and 1916, and say that the plaintiffs in error were given credit for all rents collected by them. This clearly raised an issue of fact to be tried, and it affected all of the plaintiffs in error.

Section 4991, Revised Laws of Oklahoma, 1910, says:

"An issue of fact arises: First, upon a material allegation in the petition, controverted by the answer: or, second, upon new matter in the answer, controverted by the reply; or, third, upon new matter in the reply, which shall be considered as controverted by the defendant without further pleading."

Section 4993, Revised Laws of Oklahoma, 1910, says:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided."

In Choctaw Lumber Co. v. Waldock, 78 Okla. 232, 190 Pac. 866, the court said:

"In an action for the recovery of money on promissory notes, although involving the foreclosure of a mortgage on real estate, issue being joined as to the amount due, defendant is entitled to a trial by jury as a matter of right."

See, also, Holmes v. Halstid, 76 Okla. 31, 183 Pac. 969; Childs v. Cook, 68 Oklahoma, 174 Pac. 274; Word v. Nakdimen, 74 Oklahoma, 178 Pac. 257; Franklin v. Wright, 42 Okla. 17, 140 Pac. 403; Collins v. Ind. Savings Society, 78 Okla. 319, 190 Pac. 670; Gill et al. v. Fixico, 77 Okla. 151, 187 Pac. 474.

The defendants in error contend that plaintiffs in error were not entitled to a jury trial because this is an equitable action, and rely on the following propositions: (1) Because this is a suit to foreclose a mortgage, which is an equity case. (2) Because C. W. Thomas and Minnie G. Thomas set up as one ground of defense that the execution of these notes and mortgages was procured by fraud on the part of Westheimer & Daube, and sought to have them canceled. (3) That one defense is, the notes

had been paid by the collection of the rents paid to Westheimer & Daube and the answer prayed for a cancellation of the notes.

It is not necessary for us to pass on these various contentions. An issue of fact as to the amount due on these notes to Westheimer & Daube was raised, and on this, under the statutes above quoted and the decisions of the court, the plaintiffs in error were entitled to a jury trial unless a jury trial had been waived.

On December 2, 1918, plaintiffs in error, Russell Gardner Thomas, Charles Cruce Thomas, and Douglas H. G. Thomas, minors, by Guy H. Sigler, their guardian ad litem, and William W. McCauley, Sue Wyatt, and Junie Crim, filed a motion in writing asserting they had never waived a trial by jury and asked and demanded that they be granted a jury trial in said cause. Thereafter, on December 9, 1918, C. W. Thomas filed a motion in writing in said court requesting a jury trial. On presentation of these motions, the court denied the plaintiffs in error a jury trial, stating as its reason that C. W. Thomas, as administrator, had waived a trial by jury. The record fails to show when C. W. Thomas waived a jury trial. However, the journal entry of judgment contains a recital to the effect that it appears to the court that at the last term of this court all the parties appeared in person and by attorney and by announcement in open court waived their respective rights to a jury trial and agreed in open court that the issues between the parties herein might be tried by the court.

Section 5016, Revised Laws of Oklahoma 1910, provides how a jury trial may be waived:

"The trial by jury may be waived by the parties, in actions arising on contract, and with the assent of the court, in other actions, in the following manner; By consent of the party appearing, when the other party fails to appear at the trial by himself or attorney. By written consent, in person or by attorney, filed with the clerk. By oral consent, in open court, entered on the journal."

In Campbell, Adm., et al. v. Powell, 76 Okla. 286, 185 Pac. 328, Higgins, J., speaking for the court, said:

"The Legislature, in preserving the rights of a jury trial, provides what must be done, and this is in clear and unambiguous language, and there is no time fixed for this demand to be made. The statute indicates that the waiver of a jury must be affirmatively shown. If the parties desire to waive a jury and submit their cause to the

court, the statute gives them a clear right so to do. In this case there was no written consent to such waiver filed with the clerk or oral consent in open court entered on the journal. The plaintiffs in error did not go to trial without demanding, but demanded one."

The plaintiffs in error were entitled to a jury trial; they demanded it; and by refusing it the court deprived them of a statutory right. As this case will have to be reversed and sent back for a new trial, it will not be necessary for us to pass on the other assignments of error. If any errors did occur, it is not likely they will again occur on a retrial of the case.

For the reason that the plaintiffs in error were deprived of a statutory right, the judgment of the trial court is reversed, and the cause remanded, with instructions to sustain the motion for a new trial as to the issues between defendants in error, Westheimer & Daube, and the plaintiffs in error.

The judgment of the district court is reversed.

HARRISON, C. J., and JOHNSON, McNEILL, and NICHOLSON, JJ., concur.